United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 13, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-10543
Summary Calendar
_____

ENDIA HARRIS-CHILDS,

Plaintiff-Appellant,

v.

MEDCO HEALTH SOLUTIONS INC.;
MEDCO HEALTH SOLUTIONS OF TEXAS LLC;
MERCK-MEDCO RX SERVICES OF TEXAS LLC;
MERCK AND COMPANY, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Texas
4:03-CV-77

_____

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This appeal is from a district court's grant of summary judgment in favor of an employer in a race and gender discrimination case. Finding no genuine issue of material fact, we AFFIRM the grant of summary judgment.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I. BACKGROUND

Endia Harris-Childs ("Appellant") was hired as a staff pharmacist by Medco Health Solutions, Inc., Medco Health Solutions of Texas, LLC, and Merck & Company ("Appellees") in 1988, at their Fort Worth facility. Appellees operate a home delivery service pharmacy. Appellant became a customer service research pharmacist in 1995. In July of 2001, Appellant was the first customer service research pharmacist to attend computer-based prescription completion protocols ("OC" or "Qrx") and to rotate shifts at the OC/QRx department. In August, Appellant received an award for outstanding customer service. However, by the next month Appellant's performance was at or near the bottom of all the pharmacists in the OC/QRx department.

Subsequently, Appellant received warnings indicating her unacceptable performance in timely processing prescriptions. Additionally, Cindy Wood, an OC/QRx supervisor, met with Appellant on several occasions in an attempt to assist her in reaching the performance goal. Appellant complained to Wood that she was the only customer research pharmacist to rotate for two-hour shifts to the OC/QRx department.

In January, Appellant began a leave of absence. On February 7, Wood informed Appellant that she wanted to meet to discuss Appellant's performance. During this meeting, Appellant stated that she had been advised by her "legal team" not to attend meetings without their presence. After refusing to discuss her

work performance, Appellant was sent home. Appellees' human resources department called Appellant and instructed her to come to the facility on February 11. Appellant and her husband arrived and two union representatives asked to meet with her in a conference room. One representative informed her that if she did not agree to meet with management she would be terminated. Appellant testified that she returned to the front lobby and waited for management to contact her. She did not recall how long she waited that morning. She did not notify any Medco employee or the receptionist's desk that she had been waiting to speak with management and was going to leave. She testified that because no one acknowledged her presence, she went home with her husband. Subsequently, Appellant received a letter informing her that she had been terminated for her "persistent refusal to meet with management to discuss your work performance [which] constitutes gross misconduct and [for] leaving work today without authorization from the Company [which] constitutes an abandonment of your position."

Appellant thereafter filed a charge of discrimination with the EEOC, which did not find a violation and issued a Right to Sue letter. Appellant filed the instant lawsuit, alleging, *inter alia,* claims for: (1) racial and gender discrimination in violation of Title VII; (2) racial discrimination in violation of 42 U.S.C. § 1981; (3) racial harassment in violation of Title VII; (4) retaliation in violation of Title VII. The district court granted

summary judgment on all claims.  This appeal followed.

II.  STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standards as the district court.  *E.g.*, *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996).  Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Fact questions must be considered with deference to the nonmovant. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989).  Thus, if a fact question is dispositive of a motion for summary judgment, "we must review the facts drawing all inferences most favorable to the party opposing the motion." *Id*. (citation and internal quotation marks omitted).  Questions of law are reviewed *de novo*.  *Id*.

III. ANALYSIS

A.   *Discrimination*

To establish discrimination, a plaintiff must show:  "(1) that he is a member of a protected group; (2) that he was qualified for the position held; (3) that he was discharged from the position; and (4) that he was replaced by someone outside of the protected group."  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

4

The district court analyzed Appellant's discrimination claim under the tripartite burden-shifting test established by *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973). Under this familiar framework, the plaintiff bears the burden of establishing a prima facie case of discrimination; upon such a showing, the burden shifts to the defendant(s) to articulate some legitimate, non-discriminatory reason for the challenged employment action; once articulated, then the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext to unlawful discrimination. *See McDonnell Douglas*, 411 U.S. at 802-04.

Appellant argues for the first time on appeal that her employer had mixed motives for terminating her. Thus, she argues, the district court erred in using the *McDonnell Douglas* framework. Relying on *Desert Palace*, *Inc. v. Costa*, 539 U.S. 90 (2003), she argues that the district court should have analyzed her case under the modified *McDonnell Douglas* framework. By failing to present her mixed-motives claim to the district court in the first instance, Appellant has waived it. *E.g., Ramirez Rodriguez v. Boehringer Ingelheim,* 425 F.3d 67, 78 n.12 (1st Cir. 2005); *Mailly v. Park Place Entertainment Corp.,* 114 Fed. Appx. 602, 603 (5th Cir. Sept. 28, 2004) (unpublished).

Appellant next argues that the district court erred in finding no genuine issue of fact with respect to her discrimination claim.

The district court found that Appellant had demonstrated a prima facie case of discrimination because she: is an African-American female; was qualified for her position; was terminated, and apparently replaced by a white male. The district court further found that Appellees' reason for terminating Appellant (refusal to meet with management to discuss work performance and leaving work without authorization) was a legitimate non-discriminatory reason. "The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action." *Aldrup v. Caldera,* 274 F.3d 282, 286 (5th Cir. 2001).

Appellant argues that the district court had to make credibility findings because it believed that Appellant refused to participate in the meeting with management. Contrary to Appellant's argument, there was no need for the district court to make a credibility finding. Appellant's deposition testimony was sufficient to show that she refused to discuss her work performance in the meeting. Appellant's testimony also makes clear that, after being warned that she would be terminated if she did not meet with management, she waited an unspecified period of time in the lobby and left without notifying anyone or attempting to contact management. We agree with the district court that Appellant has failed to demonstrate a genuine issue of material fact with respect

6

to Appellee's reason for termination.[2]

### B. *Retaliation*

Appellant next argues that the district court erroneously granted summary judgment with respect to her retaliation claim. More specifically, she contends that there is a genuine issue of material fact as to whether she participated in a protected activity under Title VII. To demonstrate a claim for retaliation, Appellant must prove: (1) that she engaged in an activity that was protected; (2) an adverse employment action occurred; and (3) a causal connection existed between the participation in the activity and the adverse employment action. *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir. 1998). We are concerned solely with ultimate employment decisions. *Id*.

Here, the district court found that "there is no evidence that [Appellant], when she made her complaints to management, ever mentioned that she felt she was being treated unfairly due to her *race* or *sex*. In fact, in her deposition, [Appellant] admits that she never mentioned her race or sex when she made her complaints." (emphasis in original). Accordingly, the district court held that Appellant failed to demonstrate that she engaged in a protected

---

[2]    Appellant also argues that there is a fact issue with respect to whether (1) she violated company policy as it is set forth in Appellees' handbook and (2) the union was Appellant's sole legal representative. Because we find that these are not material facts, Appellant cannot show the district court erred in granting summary judgment.

activity under Title VII.

We agree. In her appellate brief, Appellant does not allege that she specifically complained of racial or sexual harassment, only harassment. Appellant believes the term "harassment" connotes either sexual or racial harassment and, in support of this proposition, cites *Nash v. Electrospace Systems, Inc.,* 9 F.3d 401 (5th Cir. 1993). *Nash* is inapposite. *Nash* recognizes that while "sexually hostile or abusive work environments are no longer to be tolerated under Title VII, that fact does not transform Title VII into a strict liability statute for employers. An employer is liable only if it knew or should have known of the employee's offensive conduct and did not take steps to repudiate that conduct and eliminate the hostile environment." *Id.* at 404.

Although we are mindful that we review the summary judgment record in the light most favorable to Appellant, we do not believe Appellant's deposition testimony shoulders her burden of demonstrating that she complained of racial or sexual discrimination to her employer. Although her deposition demonstrates she complained of unfair treatment—such as other customer service research pharmacists were not required to rotate out to the QRX department—she has not demonstrated that she put the employer on notice that her complaint was based on racial or sexual discrimination. Because she has failed to show that she engaged in a protected activity under Title VII, she cannot show retaliation.

The district court properly granted summary judgment on this claim.

C.    *Hostile Work Environment*

Finally, Appellant argues that the district court erred in granting summary judgment in favor of Appellees with respect to the claim of hostile work environment in violation of Title VII.  To survive summary judgment, Appellant must create a fact issue on each of the elements of a hostile work environment claim: (1) racially discriminatory intimidation, ridicule and insults that are; (2) sufficiently severe or pervasive that they; (3) alter the conditions of employment; and (4) create an abusive working environment.  *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995) (involving hostile work environment based on sexual harassment).  To determine whether a working environment is hostile or abusive, all circumstances must be considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993).

Appellant must show that the discriminatory conduct was severe or pervasive enough to create an objectively hostile or abusive work environment. *Id*. at 370. This Court has opined that "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the

9

victim's employment and create an abusive working environment that violates Title VII." *Wallace v. Texas Tech University*, 80 F.3d 1042, 1049 n. 9 (5th Cir.1996) (citing *DeAngelis*, 51 F.3d at 593).

Appellant, in an attempt to demonstrate a hostile work environment, asserts that her employer treated her worse than non-African-American pharmacists in terms of scheduling, work performance expectations, and disciplinary incidents (including threats of termination). The district court granted summary judgment on the hostile work environment claim, ruling that Appellant "failed to provide any evidence that any of the alleged harassing events were *based on her race* or *had a racial character or purpose*." (emphasis in original). The court further noted that Appellant did not recall ever hearing a racist remark during her employment.

After reviewing the record, we are not persuaded that the treatment alleged constitutes an objectively hostile work environment. Furthermore, we agree with the district court that Appellant has failed to show that the harassment was racially based. Accordingly, the district court properly granted summary judgment with respect to the hostile work environment claim.

In conclusion, the district court's summary judgment is AFFIRMED.