**Opinion filed July 31, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00199-CV

_____

**JENNIE LUCAN, Appellant**

**V.**

**HSS SYSTEMS, L.L.C. D/B/A SHARED SERVICE
CENTER-SAN ANTONIO, Appellee**

**On Appeal from the 250th District Court**

**Travis County, Texas**

**Trial Court Cause No. D-1-GN-10-001941**

## O P I N I O N

Jennie Lucan appeals from the trial court's take-nothing summary judgment in favor of her former employer, HSS Systems, L.L.C. d/b/a Shared Service Center-San Antonio. In her sole appellate issue, Lucan contends that she presented more than a scintilla of evidence on each element of her retaliation claim against HSS under Section 21.055 of the Texas Commission on Human Rights Act

(TCHRA)[1] and that she presented more than a scintilla of evidence that HSS's stated reason for her termination—that she failed to meet a numerical productivity standard—was a mere pretext for retaliation. Based on these contentions, Lucan asserts that the trial court erred when it granted HSS's motion for summary judgment on both traditional and no-evidence grounds and when it failed to grant her motion for new trial. We affirm.

In November 2007, Lucan began employment with HSS as a registrar at St. David's South Austin Medical Center in Austin. As a registrar, Lucan had the responsibility to register patients at the hospital. Lucan's job duties required her to obtain necessary information from patients and to verify the patients' insurance coverage. On April 1, 2009, HSS terminated Lucan's employment.

In June 2010, Lucan filed suit against HSS. Lucan alleged that, "[i]n approximately May of 2008, [she] was subjected to sexual misconduct in the workplace involving two co-workers." Lucan further alleged that, "[s]pecifically, a female employee named [Corina][2] S. (Defendants know her last name) was standing at a copy machine one night making copies while a male LVN named Josh C. (Defendants know his last name) was standing behind her"; that "Josh pushed his groin into [Corina's] rear end hard and gyrated his hips while rubbing his hands up and down [Corina's] thighs"; and that, "[i]n response, [Corina] pushed her rear-end out and pressed it against Josh's groin while smiling."

---

[1] Section 21.055 is found in Chapter 21 of the Texas Labor Code. *See* TEX. LABOR CODE ANN. § 21.055 (West 2006). Courts refer to Chapter 21 of the Labor Code as the Texas Commission on Human Rights Act. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 502 n.1 (Tex. 2012); *see* LABOR §§ 21.001–.556 (West 2006 & Supp. 2013). However, the Texas Workforce Commission civil rights division has replaced the Commission on Human Rights. *Prairie View*, 381 S.W.3d at 502 n.1. Throughout this opinion, we refer to Chapter 21 of the Labor Code as the TCHRA.

[2] In parts of the record, "Corina" is referred to as "Curina." We will refer to the employee as "Corina" throughout this opinion.

Lucan alleged that she reported Josh's and Corina's "improper and offensive sexual conduct" to a supervisor, Director Jane Heckler, and to Lucan's Team Lead, Tammy, whose last name was unknown to Lucan. Lucan further alleged that she made a written report on March 20, 2009, to Human Resources Manager Stephanie Long about the same offensive sexual conduct. In the writing, Lucan stated that, "[a]pproximately in May, 2008, I witnessed a sexual behavior between nurse, Josh (LVN) and my co-worker (Corina) who is no longer in the department." Lucan alleged that, as a result of her reports about the offensive sexual conduct, she was subjected to numerous adverse employment actions, including her termination from employment.

Lucan alleged that HSS retaliated and discriminated against her in violation of Section 21.055 of the TCHRA. Specifically, Lucan alleged that "[HSS] retaliated and/or discriminated against [her] for her opposition to discriminatory practices, including but not limited to her opposition to a work environment made hostile based on sex." Lucan also alleged that the retaliation included, but was not limited to, "offensive statements, offensive physical contact, unfounded written reprimands, unfounded Performance Improvement Plans, the denial of a transfer, and the decision to fire [her]."

HSS filed a combined traditional and no-evidence motion for summary judgment based on the grounds that Lucan had no evidence or insufficient evidence to raise a genuine issue of material fact on any of the three elements of a prima facie case of retaliation or on the issue of whether Lucan's termination was a pretext for retaliation. Lucan filed a response to the motion. Following a hearing, the trial court entered an order in which it granted the motion. Lucan filed a motion for new trial. The motion was overruled by operation of law.

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Where, as here, a

trial court does not specify the grounds it relied upon to grant the summary judgment, we must affirm the summary judgment if any of the grounds presented in the motion for summary judgment are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We find one of HSS's no-evidence grounds dispositive. We review a no-evidence summary judgment under the same legal sufficiency standard as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Accordingly, we examine the record in the light most favorable to the nonmovant. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156–57 (Tex. 2004). We disregard all contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 751. A no-evidence motion is properly granted if the nonmovant fails to bring more than a scintilla of probative evidence to raise a genuine issue of material fact as to a challenged element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *King Ranch*, 118 S.W.3d at 751.

The TCHRA is a comprehensive fair employment practices act and remedial scheme, and it is modeled on Title VII of the federal Civil Rights Act of 1964 (Title VII).[3] *Prairie View*, 381 S.W.3d at 502–03. The TCHRA provides the framework for employment discrimination claims in Texas. *Id.* The TCHRA was enacted in an effort to address the specific evils of discrimination and retaliation in the workplace and to coordinate Texas law with federal antidiscrimination and retaliation laws under Title VII. *Id.* at 504. Because one of the primary goals of the TCHRA is to coordinate state law with federal law in the area of employment

---

[3]Title VII is codified at 42 U.S.C. §§ 2000e to 2000e-17.

4

discrimination, we look to analogous federal statutes and the cases interpreting them to guide us when interpreting the TCHRA. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 308 (Tex. 2010); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001).

Section 21.051 of the TCHRA defines discrimination by an employer as follows:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

LABOR § 21.051(1), (2). Sexual harassment is a form of sex discrimination that is prohibited by Title VII and the TCHRA. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67 (1986); *City of San Antonio v. Cancel*, 261 S.W.3d 778, 783 (Tex. App.—Amarillo 2008, pet. denied). Generally, sexual harassment claims take one of two forms: (1) quid pro quo harassment, in which employment benefits are conditioned on sexual favors, and (2) harassment that creates a hostile or offensive work environment. *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004). To establish that a hostile work environment existed, the plaintiff must show that the sexual harassment was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and to create an abusive working

environment. *Meritor Sav. Bank*, 477 U.S. at 67; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805–06 (Tex. 2010).

Lucan asserted a claim for retaliation under Section 21.055 of the TCHRA. Section 21.055 provides that "[a]n employer…commits an unlawful employment practice if the employer…retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing." LABOR § 21.055.

Discrimination claims and retaliation claims can be proven by direct or circumstantial evidence. *Quantum Chem. Corp.*, 47 S.W.3d at 476–77; *Crutcher v. Dallas Indep. Sch. Dist.*, 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.). In this case, Lucan acknowledges that her retaliation claim is based on circumstantial evidence. In the absence of direct evidence of retaliation, the employee must make out a prima facie case of retaliation under the *McDonnell Douglas* burden-shifting analysis.[4] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *Crutcher*, 410 S.W.3d at 493.

To establish a prima facie case of retaliation under the TCHRA, a plaintiff must show (1) that she engaged in a protected activity listed in Section 21.055 of the Labor Code, (2) that an adverse employment action occurred, and (3) that a causal link existed between her participation in the protected activity and the adverse employment action.[5] *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483,

---

[4]Reviewing courts apply the *McDonnell Douglas* burden-shifting analysis to discrimination and retaliation cases that have not been fully tried on the merits. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). When a case has been fully tried on the merits, reviewing courts do not engage in the burden-shifting analysis but, instead, determine whether the evidence is legally sufficient to support the jury's ultimate finding. *Id.*

[5]If a plaintiff meets her burden to establish a prima facie case of retaliation, the burden shifts to the employer to demonstrate a legitimate, nonretaliatory reason for the adverse employment action.

6

487 (5th Cir. 2004); *Crutcher*, 410 S.W.3d at 493; *Dias v. Goodman Mfg. Co.,* 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). The protected activities under Section 21.055 consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; or (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. LABOR § 21.055; *Dias*, 214 S.W.3d at 676.

As stated above, Lucan alleged in her petition that "[HSS] retaliated and/or discriminated against [her] for her opposition to discriminatory practices, including but not limited to her opposition to a work environment made hostile based on sex." HSS moved for no-evidence summary judgment on the ground, among others, that Lucan could not establish a prima facie case of retaliation because she had no evidence that she engaged in a protected activity. In response, Lucan asserted that her oral and written reports to her superiors at HSS about her coworkers' "offensive sexual conduct" were protected activities under Section 21.055 of the TCHRA because the reports constituted opposition to a discriminatory practice and the filing of a complaint.

Lucan presented an affidavit in support of her response to HSS's motion for summary judgment. In her affidavit, Lucan described the "sexual conduct" that she had witnessed, and she also stated that she had reported the conduct orally and in writing to HSS, as follows:

> In approximately May of 2008, I was working the graveyard shift when I had to make some copies. When I entered the copier room, I saw two co-workers engaged in sexual conduct with each

FOOTNOTE NO. 5 CONTINUED:

*Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002); *Crutcher*, 410 S.W.3d at 493; *Dias*, 214 S.W.3d at 676. If the employer meets this burden, then the burden shifts back to the plaintiff to present proof that the employer's stated reason for the adverse action was pretextual. *Pineda*, 360 F.3d at 487; *Crutcher*, 410 S.W.3d at 493. To meet this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007); *Crutcher*, 410 S.W.3d at 493.

other. Specifically, I saw a female employee named Corina . . . standing at the copy machine while a male LVN named Josh . . . was standing behind her. Josh was a popular and well-liked member of the staff. Josh pushed his groin into Corina's rear end hard and gyrated his hips while rubbing his hands up and down Corina's thighs. In response, Corina pushed her rear-end out and pressed it against Josh's groin while smiling. This kind of behavior in public, especially in a hospital, upset and offended me and made me extremely uncomfortable. It was so upsetting that I had difficulty concentrating on my job. I was especially upset because Corina was married and Josh was engaged to be married. I was also upset because this behavior violated the company's harassment policy, which prohibits physical conduct of a sexual nature, especially where it creates an offensive working environment.

Since I knew about sexual misconduct in the workplace, I had a duty to report it and could get in trouble if I did not report it. So, I made an oral complaint that same night to my Team Lead Tammy (I don't remember her last name). The next day, I made the same oral complaint by phone to Director Jane Heckler. I don't recall the exact language I used, but in each instance I described what I saw generally (for example, that Josh's hands were all over Corina's rear end and he was gyrating and grinding into her from behind), expressed that it bothered me, and indicated that something should be done to make sure that kind of conduct stopped. I will refer to this as "my oral complaint."

. . . .

On approximately March 20, 2009, I emailed Ms. Long a request for transfer and a supporting statement. A true and correct copy of that email is attached and incorporated by reference as **Exhibit A-1**, and I will refer to it in this affidavit as "my written complaint." My written complaint began, "Approximately in May, 2008, I witnessed a sexual behavior between nurse, Josh (LVN) and my co-worker (Corina) who is no longer in the department. I reported it to my Director, Jane Heckler and my team lead, Tammy, who is also no longer with the company."

8

During her deposition, Lucan testified about the incident that involved Josh and Corina. According to her testimony, Lucan was headed to the copy machine to make copies and, when "[s]he came around the corner," she saw Josh and Corina standing at the copy machine. Lucan said that "Josh was behind [Corina] with his hands on [Corina's] buttocks and gyrating into her backside." Lucan observed the conduct for "a couple of seconds" and immediately left the area because she was embarrassed. Lucan testified that the May 2008 incident that involved Josh and Corina was the only incident of sexual conduct or sexual misbehavior that she witnessed while she was employed by HSS at the medical center.

Lucan contends in her brief that her oral and written reports to her superiors at HSS about her coworkers' "offensive sexual conduct" constituted opposition to a discriminatory practice and the filing of a complaint under Sections 21.055(1) and (3) of the TCHRA. Therefore, Lucan contends that she engaged in protected activity when she reported the offensive sexual conduct.

For an employee to establish that she opposed a discriminatory practice, the employee must demonstrate that she had a good faith, reasonable belief that her employer engaged in a discriminatory practice that was prohibited by the law. *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 224 (Tex. App.—San Antonio 1998, pet. denied); *see Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1140–41 (5th Cir. 1981). Engaging in protected activity requires a complaint of some sort of discrimination that is covered by the TCHRA. *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004). The employee is not required to show that an unlawful practice actually existed but, instead, must only show that she held a good faith, reasonable belief that the employer engaged in activity made unlawful by Title VII or the TCHRA. *Cox & Smith*, 974 S.W.2d at 224. A reasonable belief consists of subjective and objective components. *Id.* at 225. First, a plaintiff must establish that she subjectively, in good faith, believed

that her employer was engaged in unlawful employment practices. *Id.* at 225–26. Second, she must establish that her belief was objectively reasonable in light of the facts presented. *Id.*

The summary judgment evidence, viewed in the light most favorable to Lucan, shows that Lucan briefly witnessed a single, isolated incident of sexual conduct between two of her coworkers. Thus, the complained of conduct was not severe or pervasive in the workplace. Lucan reported the incident to her superiors at HSS. The fact that Lucan's coworkers engaged in sexual conduct provides no support for a belief that HSS engaged in a discriminatory practice, such as sexual harassment, under the TCHRA. Lucan's reports to her superiors centered on her coworkers' conduct toward each other. In the reports, Lucan did not claim that her employer, HSS, had engaged in any form of discriminatory conduct against her or anyone else. We conclude that, based on the evidence, Lucan could not have held a good faith, reasonable belief that HSS had engaged in an unlawful discriminatory practice prohibited in the TCHRA.

In *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, the Fifth Circuit held that an employee's report to his supervisors that two managers were engaging in sexual behavior did not constitute a protected activity under Title VII or Section 21.055 of the TCHRA. 294 F. App'x 159, 162 (5th Cir. 2008). In *Arora*, the trial court granted summary judgment to the employer on the employee's retaliation claim. The Fifth Circuit affirmed the summary judgment. *Id.*

In *Arora*, the Fifth Circuit recognized that "[b]oth Title VII and the [TCHRA] prohibit discrimination against employees who have opposed an unlawful employment practice, or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment practices statute." *Id.* The court concluded that the employee had failed to establish a prima facie case of retaliation because he had not raised a genuine issue of material fact

10

as to whether he engaged in a protected activity. *Id.* The court explained the rationale for its holding as follows:

> [The employee] alleges he told supervisors that an employee was drinking at the bar without paying and that two managers were engaging in sexually provocative behavior. While ungainly, the complained about behavior does not involve an employee being treated unfairly due to race or sex, thus the complaints are not protected activity.

*Id.* Likewise, in this case, Lucan's coworkers' offensive sexual conduct did not involve Lucan or any other employee being treated unfairly due to sex or any other unlawful employment practice. Thus, Lucan's reports to her superiors about the sexual conduct did not constitute a protected activity under the TCHRA.

Lucan relies on *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282 (Tex. App.—Corpus Christi 2000, pet. denied). In *Lane*, the court held that an employee, Lane, engaged in protected activity under Section 21.055 of the TCHRA when he reported to his employer's district manager that a female employee, Sparks, was spreading "sexual rumors" about Lane to other coworkers and that the rumors were making Lane feel uncomfortable in the workplace and interfering with his work. *Lane*, 31 S.W.3d at 296. The court explained that the context of the rumors was that Lane had made unwelcome sexual advances toward Sparks. *Id.* Lane learned about the alleged rumors from coworkers. *Id.* The court concluded that, based on what Lane had learned from his coworkers, Lane had a reasonable belief that Sparks was sexually harassing him and that, therefore, Lane's report to the district manager constituted protected activity as a complaint under Section 21.055(3) of the TCHRA. *Id.*

This case is distinguishable from *Lane*. Here, the coworkers' conduct was not directed toward Lucan. Lucan saw her coworkers engaging in sexual conduct when she entered the copy room, and she immediately left the room when she saw

her coworkers. Lucan did not see her coworkers engage in sexual conduct on any other occasion. Lucan's coworkers did not engage in any conduct that would have given Lucan a reasonable belief that they were sexually harassing her.

Lucan also contends that she engaged in protected activity because she reported conduct that constituted sexual harassment under HSS's Equal Employment Opportunity/Harassment Policy. HSS's policy prohibited "any form of unlawful employee harassment based on race, color, religion, gender, national origin, age, disability or status in any group protected by state or local law." The policy provided that "[e]ach member of management is responsible for creating an atmosphere free of discrimination and harassment, sexual or otherwise." With respect to sexual harassment, the policy prohibited, among other things, "[u]nwelcome sexual advances, requests for sexual favors, and all other verbal or physical conduct of a sexual or otherwise offensive nature, especially where . . . [s]uch conduct has the purpose or effect of creating an intimidating, hostile, or offensive working environment."

Lucan contends in her brief that her coworkers engaged in "physical conduct of a sexual or otherwise offensive nature," which constituted sexual harassment under the policy. Lucan states in her brief that "[HSS] cannot reasonably contend that the conduct of which [Lucan] complained constituted sexual harassment under the company's own harassment policy and at the same time argue that [Lucan] could not as a matter of law hold a good faith reasonable belief that the conduct constituted sexual harassment." However, even if the conduct of Lucan's coworkers fell within the definition of sexual harassment under the policy, that conduct would not have given Lucan any reason to believe that HSS was engaging in unlawful discrimination against her or any other employee.

Because Lucan did not present summary judgment evidence that she engaged in a protected activity under Section 21.055 of the TCHRA, she failed to

establish a prima facie case of retaliation. Therefore, the trial court did not err when it granted a no-evidence summary judgment to HSS or when it failed to grant Lucan's motion for new trial. In view of our holding, we need not address the other arguments raised by Lucan in her sole issue, and her issue is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

July 31, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.