Opinion filed May 12, 2016



In The

# Eleventh Court of Appeals

_____

## No. 11-15-00074-CV

_____

## TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellant

## V.

## WANDA WHITMAN, Appellee

**On Appeal from the 161st District Court**

**Ector County, Texas**

**Trial Court Cause No. B-136,946**

### O P I N I O N

Wanda Whitman filed suit against the Texas Department of Family and Protective Services in connection with two sexual harassment claims and a retaliation claim. The Department filed a plea to the jurisdiction, and the trial court denied it. We reverse and render.

# I. *Background Information*

In July 2012, Whitman accepted a position with the Department as a "Conservatorship Worker II" in Odessa. Shortly after Whitman accepted the position, she attended new employee training with another recent hire, Yesenia Villanueva, in Amarillo. During the three months of training, Villanueva made several comments with sexual content, connotations, or references that made Whitman uncomfortable.[1] On one such occasion during the training, Villanueva referred to something as a "long bone" and asked Whitman if she knew what "long bone" meant. Whitman contended that Villanueva made similar inappropriate comments throughout the training, but Whitman could not remember any other examples.

In October 2012, Whitman and Villanueva completed their training in Amarillo, and both returned to Odessa. There, Villanueva continued to make comments with sexual content, connotations, or references to Whitman, as did another employee, Courtney Reese. Whitman recalled several specific instances in Odessa of what she believed to be sexual harassment. On one of those occasions, as Whitman was eating a corn dog for lunch, Villanueva remarked that Whitman "just like[d] the weenie." On another occasion, Villanueva asked Whitman if she used a vibrator. When Whitman declined to answer, Reese told her she would sleep better if she used a vibrator. On yet another occasion, Reese asked Whitman about a man who lived in an RV on Whitman's property and suggested that Whitman "g[ot] off at night peeking in his windows." When Whitman, as part of her job duties, met with police officers, Reese asked Whitman, "Did they have hard bodies? Could you see if they had [hard bodies] below the belt?" During an office lunch, Reese and

---

[1]The Department denied that any of its employees made sexually inappropriate statements. However, because of the posture of this case, we accept all of Whitman's allegations as true. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

Villanueva commented that a tube of bath gel "could be used for other things even if it was a little short." Also, on several occasions, Reese and Villanueva asked Whitman, an unmarried person, whether she missed "having sex." Although Whitman recalled these specific instances, she contended that her suit was not limited to them. Instead, she alleged that the harassment was "continuous and unrelenting."

Rachel Flores was a supervisor in the Odessa branch of the Department. Shortly after Villanueva asked Whitman whether she used a vibrator, Whitman told Flores that she did not appreciate Villanueva and Reese "asking [her] questions like that." Flores told Whitman to "[j]ust ignore them." Flores evaluated Whitman in March 2013 and stated in her report, which was signed by Flores and three others in the Department's supervisory structure, that Whitman "[w]as doing good." However, the Department subsequently indicated that Whitman (1) had difficulty with some clients, the county attorney, and one of the representatives of the Court Appointed Special Advocates (CASA); (2) was unprepared to give court testimony in a case; (3) had failed to get a courtesy worker in another case; and (4) had disclosed confidential information.

On May 6, 2013, while Whitman was still a probationary employee, Flores recommended that Whitman be discharged. Flores recommended that Whitman be discharged because Whitman failed to (1) perform her job duties, (2) meet health and human services' standards for job performance, and (3) exhibit courtesy and respect in all interactions with clients, peers, and coworkers. Four days later, Whitman was discharged.

## II. *Procedural History*

Whitman filed a complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission in June 2013 in which she

3

alleged sexual harassment by the Department. Whitman received a right-to-sue letter on December 4, 2013, and she filed this suit against the Department. She claimed quid pro quo harassment, hostile work environment harassment, and retaliation.

The Department filed its "Plea to the Jurisdiction and Motion for Summary Judgment," and the court held a hearing on both. After the hearing, the trial court denied the Department's plea to the jurisdiction and its motion for summary judgment. The Department appealed the denial of its plea to the jurisdiction.

## III. *Issues Presented*

The Department first asserts that the trial court erred when it denied the Department's plea to the jurisdiction because Whitman failed to show that she timely exhausted her administrative remedies. Second, the Department asserts that the trial court erred when it denied the plea to the jurisdiction because Whitman failed to make a prima facie showing or raise a material issue of fact on jurisdictional issues related to her claims and failed to establish that the trial court had subject-matter jurisdiction.

## IV. *Standard of Review*

A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to the merits of the claim. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). When a court analyzes a plea to the jurisdiction, the court must not weigh the merits of the claim but should consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). We review de novo the trial court's decision on a plea to the jurisdiction when it involves a question of law related to subject-matter jurisdiction. *Miranda*, 133 S.W.3d at 226.

When, as here, the plea challenges jurisdictional facts, we consider relevant evidence submitted by the parties. *Id.* at 227; *Blue*, 34 S.W.3d at 555. The standard of review applicable to a trial court's ruling in such situations "generally mirrors" the standard that applies to a traditional summary judgment under Rule 166a(c) of the Texas Rules of Civil Procedure. *Miranda*, 133 S.W.3d at 228. We take as true all evidence favorable to the claimant, and we indulge every reasonable inference and resolve any doubts in favor of the claimant. *Id.* If the evidence creates a material issue of fact on the jurisdictional issue, the trial court must deny the plea to the jurisdiction, and the fact issue must be resolved by the factfinder. *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.

## V. *Discussion and Analysis*

The Department asserts that the trial court erred when it denied the Department's plea to the jurisdiction because, after the Department established undisputed facts that there was no subject-matter jurisdiction, Whitman then failed to raise a material issue of fact on subject-matter jurisdiction. Because the resolution of the Department's second issue on subject-matter jurisdiction is dispositive, we address that issue first.

### A. *Issue Two: Failure to Demonstrate Subject-Matter Jurisdiction*

The Department contends that Whitman failed to make a prima facie showing or raise a material issue of fact on the question of whether the trial court had subject-matter jurisdiction over her sexual harassment and retaliation claims. The Department, as a governmental entity, is generally immune from suit. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015). However, the legislature has waived immunity for suits properly brought under the Texas

5

Commission on Human Rights Act[2] (the Act). *Id.* This waiver extends only to those claims in which the plaintiff "actually alleges a violation of" the Act "by pleading facts that state a claim thereunder." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). Thus, "[i]n a suit against a governmental employer, the prima facie case implicates both the merits of the claim *and* the court's jurisdiction." *Id.* at 635–36. A trial court's inquiry into these jurisdictional facts is not an inquiry into the substance of the complaints. Further, a trial court has the discretion to decide that the inquiry is reaching too far into the substance of the claims and should, therefore, await a fuller development of the merits. *Id.* at 637–38. Sexual harassment is a recognized category of sex discrimination under the Act. *Soto v. El Paso Natural Gas Co.*, 942 S.W.2d 671, 677 (Tex. App.—El Paso 1997, writ denied).

### 1. Quid Pro Quo Harassment

Under Title VII[3] and the Act, an employer may be held vicariously liable for quid pro quo harassment by its supervisor. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998); *Ewald v. Wornick Family Foods Corp.*, 878 S.W.2d 653, 659 (Tex. App.—Corpus Christi 1994, writ denied). Quid pro quo sexual harassment consists of discriminatory behavior by a supervisor who, by that conduct, compels an employee to choose between yielding to sexual demands or forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments. *Ewald*, 878 S.W.2d at 658.

A prima facie case of quid pro quo harassment requires a showing that (1) a supervisor (2) because of sex (3) subjects an employee to (4) unwelcome conduct that (5) affects a tangible aspect of the employment relationship. *Wal-Mart Stores,*

---

[2]TEX. LAB. CODE ANN. ch. 21 (West 2015).

[3]Title VII of the Civil Rights Act of 1964, as amended. *See* 42 U.S.C. §§ 2000e–2000e-17.

*Inc. v. Itz*, 21 S.W.3d 456, 470 (Tex. App.—Austin 2000, pet. denied). Consequently, a quid pro quo harassment suit may not be brought for an action committed by a coworker who has no supervisory authority over the plaintiff. *See Bartkowiak v. Quantum Chem. Corp.*, 35 S.W.3d 103, 110 (Tex. App.—Amarillo 2000, no pet.) (noting that, "[w]ithout any evidence of [coworker's] supervisory authority over [the plaintiff, the plaintiff] may not maintain a sex discrimination *quid pro quo* sexual harassment claim.").

There is no evidence that Villanueva or Reese had supervisory authority over Whitman. Whitman testified that neither Villanueva nor Reese was her supervisor. She instead testified that Flores was her supervisor, and she specifically denied that she asserted a quid pro quo harassment claim based on Flores's conduct. Whitman has failed to make a prima facie showing or raise a material issue of fact on her quid pro quo harassment claim. *See Mission*, 372 S.W.3d at 635–36; *Bartkowiak*, 35 S.W.3d at 110. We hold that the trial court erred when it denied the Department's plea to the jurisdiction on Whitman's quid pro quo harassment claim.

### 2. *Hostile Work Environment Harassment*

A prima facie case of hostile work environment harassment requires a showing that (1) the plaintiff belonged to a protected group; (2) the plaintiff was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (internal quotation marks omitted) (quoting *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001)); *Mayfield v. Tarrant Reg'l Water Dist.*, 467 S.W.3d 706, 712 (Tex. App.—El Paso 2015, no pet.). We look to federal precedent for interpretive guidance to meet the

legislative mandate that the Act is intended to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." LAB. CODE § 21.001(1); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 474 (Tex. 2001).

Same-sex sexual discrimination is actionable under Title VII and the Act, but only if the plaintiff can "prove that the conduct at issue was not merely tinged with offensive sexual connotations" but actually exposed a member of one sex, but not the other sex, "to disadvantageous terms or conditions of employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998). In short, the harassment must have been "discrimination because of sex." *Id.*; *accord City of San Antonio v. Cancel*, 261 S.W.3d 778, 784 (Tex. App.—Amarillo 2008, pet. denied). In *Oncale*, the Supreme Court outlined three examples of ways to show same-sex harassment: (1) by showing the alleged harasser made explicit or implicit proposals of sexual activity and providing credible evidence that the harasser was homosexual; (2) by demonstrating the harasser was motivated by general hostility to the presence of members of the same gender in the workplace; or (3) by offering direct comparative evidence of how the alleged harasser treated members of both sexes in a mixed-gender workplace. *Oncale*, 523 U.S. at 80–81; *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). The Fifth Circuit, as well as several other circuit courts, has interpreted the *Oncale* methods as "illustrative, not exhaustive." *Equal Emp't Opportunity Comm'n v. Boh Bros. Constr. Co.*, 731 F.3d 444, 455–56 (5th Cir. 2013).

As directed by the Fifth Circuit, in a case of alleged same-sex harassment, we must first "determine whether the harasser's conduct constitute[d] sex discrimination." *La Day*, 302 F.3d at 478. If so, we then "decide whether the challenged conduct meets the applicable standards for either a *quid pro quo* or hostile

[work] environment claim." *Id.* We have already addressed Whitman's quid pro quo harassment claim. For the hostile-work-environment harassment claim, Whitman does not contend that either Villanueva or Reese were homosexual; in fact, she expressly testified that they were not. Likewise, she did not allege that any of the alleged harassment included gender-specific derogatory terms or was motivated by hostility against women. Finally, Whitman testified explicitly that Villanueva and Reese teased both men and women in the office, independent of their gender. Whitman has failed to make a prima facie showing or raise a material issue of fact on any of the traditional *Oncale* methods of proving gender motivation. *See Oncale*, 523 U.S. at 80–81.

Instead, Whitman alleges gender motivation through a conclusory statement that "male employees were not subjected to the same harassment that she was." In *Gumpert v. ABF Freight System, Inc.*, the Dallas court cautioned against a very similar theory because it "fail[ed] to distinguish between harassment that happens to be directed at persons of a particular gender and harassment that is directed at persons *because* of their gender. Only the latter can be discriminatory." 293 S.W.3d 256, 261–62 (Tex. App.—Dallas 2009, pet. denied) (citing *Oncale*, 523 U.S. at 80).

First, as we have said, the record shows that Villanueva and Reese teased men as well as women. In one specific instance—referred to by Whitman in an interrogatory response—the women teased a male employee named Kendrick Ragland. The women teased him about "him being cute or him liking something." The record also shows that the women's comments that contained sexual content, connotations, or references—the gravamen of Whitman's claim—were not limited to interactions with women or even with Whitman herself. We have already referred to the bath gel comment. Although this instance is included in Whitman's complaint, Villanueva's and Reese's statements were not directed at her and were

9

instead directed generally at all men and women in attendance. Even if we take as true all evidence favorable to Whitman and indulge every reasonable inference and resolve any doubts in her favor, her evidence did not support her contention that Villanueva and Reese harassed her because of her gender. *See Oncale*, 523 U.S. at 80; *Gumpert*, 293 S.W.3d at 261–62; *see also Martinez v. Temple-Inland Forest Prods. Corp.*, No. 12-06-00213-CV, 2007 WL 2045336, at *4 (Tex. App.—Tyler July 18, 2007, no pet.) (mem. op.). We hold that Whitman has failed to raise a material issue of fact that Villanueva and Reese harassed her *because* of her gender.

But even if we were to assume that Villanueva's and Reese's actions constituted discrimination based on gender, Whitman has not alleged how their actions affected a "term, condition, or privilege" of her employment. For conduct to affect the "terms, conditions, or privileges" of employment, a plaintiff must show "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted); *accord Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805–06 (Tex. 2010). We use a cumulative review of all of the offensive behavior that comprised the alleged hostile work environment to determine whether the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the terms, conditions, or privileges of the victim's employment. *Waffle House, Inc.*, 313 S.W.3d at 806; *Cancel*, 261 S.W.3d at 786; *Wal-Mart Stores*, 21 S.W.3d at 473.

Even taking as true all evidence favorable to Whitman and indulging every reasonable inference and resolving any doubts in her favor, we are left with limited facts. *See Miranda*, 133 S.W.3d at 228. Villanueva and Reese made sexually based

10

statements to Whitman. These included, but were not limited to, the following instances: Villanueva stated that Whitman "just like[d] the weenie"; Villanueva asked her if she used a vibrator; Reese suggested that Whitman "g[ot] off" peeking into the windows of a man residing on her property; Reese asked Whitman if a group of officers she met with had "hard bodies" "below the belt"; and Reese and Villanueva asked Whitman if she missed "having sex." Villanueva and Reese also stated that a tube of bath gel "could be used for other things even if it was a little short."

The actions of Villanueva and Reese, while inappropriate, are similar to conduct that several of our sister courts have already held does not raise a material issue of fact because the conduct did not permeate the workplace with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the terms, conditions, or privileges of the victim's employment.[4] For example, in *Staller v. Service Corp. International*, the San Antonio court affirmed the trial court's order by which it granted summary judgment in favor of an employer, who was sued for a hostile work environment, where the plaintiff alleged that one of her supervisors:

> *[M]ade sexually inappropriate remarks to her such as "I'll bet you like it big," whenever she used the word "big" in conversation*, . . . made comments to her about the size of her breasts, . . . *referred to male employees of the company as her "lover,"* . . . stood over her when she sat at her desk and attempted to look down her shirt, and . . . came toward her in a menacing fashion as if to grab her in a sexual manner.

[4]The Fourth Court of Appeals recently held in *Clark* that a string of non-severe but pervasive conduct raised a material issue of fact on whether the harassment altered the terms, conditions, or privileges of a plaintiff's employment. *Alamo Heights Indep. Sch. Dist. v. Clark*, No. 04-14-00746-CV, 2015 WL 6163252, at *5 (Tex. App.—San Antonio Oct. 21, 2015, pet. filed) (mem. op.). There, the employee alleged a litany of instances where she was subjected to sexual harassment at work. *Id.* at *1–5. Whitman's conclusory allegation that her harassment was "continuous and unrelenting," even with the limited examples that she alleged, is both less severe conduct and less pervasive conduct than the facts alleged in *Clark*.

*Staller v. Serv. Corp. Int'l*, No. 04-06-00212-CV, 2006 WL 3018039, at \*5 (Tex. App.—San Antonio Oct. 25, 2006, no pet.) (mem. op.) (emphasis added).  The court held that the plaintiff had failed to raise a material issue of fact that the employer's actions altered a term, condition, or privilege of the plaintiff's employment.  *Id.*

Likewise, in *Garcia v. Schwab*, the Corpus Christi court affirmed the trial court's order in which it granted summary judgment in favor of the employer, who was sued for a hostile work environment, where the plaintiff alleged that her supervisor:

> [S]tar[ed] at and comment[ed] on her breasts; touch[ed] his genitals; *frankly discuss[ed] highly personal and sexual matters with her*; remark[ed] on her appearance; star[ed] at and comment[ed] on the photograph of a female client; *comment[ed] on the appearance of other women*; ma[de] repeated sexual references which she felt were intended to arouse her; [and] insult[ed] her.

*Garcia v. Schwab*, 967 S.W.2d 883, 884–85 (Tex. App.—Corpus Christi 1998, no pet.) (emphasis added).  Again, the court held that the plaintiff did not raise a material issue of fact to show that the employer's actions altered a term, condition, or privilege of the plaintiff's employment.  *Id.* at 887.  These examples outline how our sister courts have held that certain conduct did not raise a material issue of fact in relation to the existence of a hostile or abusive work environment.  And our sister courts also have held that even more severe conduct failed to raise a material issue of fact about whether the conduct altered the terms, conditions, or privileges of employment.  *See, e.g.*, *Spring v. Walthall, Sachse & Pipes, Inc.*, No. 04-09-00474-CV, 2010 WL 2102988, \*5–6 (Tex. App.—San Antonio May 26, 2010, no pet.) (mem. op.); *Cancel*, 261 S.W.3d at 778; *Cox & Smith Inc. v. Cook*, 974 S.W.2d 217, 227 (Tex. App.—San Antonio 1998, pet. denied).  Thus, Whitman did not raise a material issue of fact relevant to whether the workplace was permeated with

12

discriminatory intimidation, ridicule, and insult that was severe or pervasive enough to alter the terms, conditions, or privileges of her employment.

Whitman also failed to raise a material fact question as to the subjectivity requirement for a prima facie showing of her hostile-work-environment harassment claim. A hostile work environment must be both (1) one that a reasonable person would find hostile or abusive and (2) one that the victim in fact perceived to be so. *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App.—Eastland 2005, pet. denied); *Green v. Indus. Specialty Contractors, Inc.*, 1 S.W.3d 126, 132 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Garcia*, 967 S.W.2d at 885 (citing *Harris*, 510 U.S. at 22). Whitman indicated that she never contemplated quitting her position at the Department because she enjoyed her job, liked her coworkers, and thought of Villanueva as a friend. Further, in a self-evaluation that Whitman filled out in December 2012, she stated, "I love my job." Even if we take as true all evidence favorable to Whitman, indulge every reasonable inference and resolve any doubts in her favor, her allegations do not raise a material issue of fact as to the subjectivity requirement. *See Miranda*, 133 S.W.3d at 228; *Staller*, 2006 WL 3018039, at *6.

Because Whitman failed to raise a material issue of fact on the jurisdictional requirements of her hostile work environment claim, we hold that the trial court erred when it denied the Department's plea to the jurisdiction as to that claim. *See Mission*, 372 S.W.3d at 635–36; *Miranda*, 133 S.W.3d at 228; *Gumpert*, 293 S.W.3d at 261–62; *Martinez*, 2007 WL 2045336, at *4; *Staller*, 2006 WL 3018039, at *6; *Garcia*, 967 S.W.2d at 884–85.

### *3. Retaliation*

Whitman also brought a retaliation claim against the Department. We must review this claim, even though we have held that the trial court erred when it denied

the Department's plea to the jurisdiction. We do that because an employee who brings a retaliation claim is not required to show that an unlawful practice *actually existed*; instead, she must only show that she held a good faith, reasonable belief that the employer engaged in activity made unlawful by Title VII or the Act. *Lucan v. HSS Sys., L.L.C.*, 439 S.W.3d 606, 613 (Tex. App.—Eastland 2014, no pet.) (citing *Cox & Smith*, 974 S.W.2d at 224).

To establish a prima facie case of retaliation under the Act, a plaintiff must show (1) that she engaged in a protected activity listed in Section 21.055 of the Labor Code, (2) that an adverse employment action occurred, and (3) that a causal link existed between her participation in the protected activity and the adverse employment action. *Lucan*, 439 S.W.3d at 611.

However, engaging in a protected activity requires a complaint of discrimination covered by the Act. *Id.* (citing *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784, 796 (S.D. Tex. 2004)). Protected activities under Section 21.055 consist of (1) opposing a discriminatory practice; (2) making or filing a charge; (3) filing a complaint; and (4) testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *Id.* at 611. "A vague charge of discrimination will not invoke protection under the statute." *Spinks*, 322 F. Supp. 2d at 797. Consequently, a plaintiff must show "that she complained about harassment or discrimination based on race, color, disability, religion, sex, national origin, or age for the complaint to qualify as a protected activity for the purpose of establishing a prima facie case of retaliation." *Barnes v. Tex. A&M Univ. Sys.*, No. 14-13-00646-CV, 2014 WL 4915499, at *4 (Tex. App.—Houston [14th Dist.] Sept. 30, 2014, no pet.) (mem. op.); *accord Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006); *Lucan*, 439 S.W.3d at 613.

Whitman spoke to Flores about Villanueva's and Reese's statements. Although Whitman did not recall the specific date, she said that, shortly after Villanueva asked her whether she used a vibrator, Whitman told Flores that she "didn't appreciate" Villanueva and Reese asking her questions "like that." Flores responded that she should "[j]ust ignore them." This was the only occasion on which Whitman complained to Flores, and Whitman did not make a complaint to anyone else. Whitman did not assert or even imply that the women's harassment was based on her gender. Her vague complaint to Flores that she did not appreciate her coworkers' statements was not specific enough about sexual harassment to invoke the protection of the Act. *See Lucan*, 439 S.W.3d at 613; *Spinks*, 322 F. Supp. 2d at 797; *see also Harris-Childs*, 169 F. App'x at 916 (affirmed summary judgment on a Title VII retaliation claim because plaintiff never "specifically complained of racial or sexual harassment, only harassment"). Consequently, Whitman has failed to raise a material issue of fact on the specificity element of her retaliation claim, which is a jurisdictional requirement. *See Harris-Childs*, 169 F. App'x at 916; *Mission*, 372 S.W.3d at 635–36.

But even if we assume that her complaint did involve protected activity, Whitman also failed to raise a material issue of fact to establish by direct or circumstantial evidence a causal connection between her complaint and her termination. However, close timing between an employee's protected activity and an adverse action against her may provide the "causal connection" required to make out a prima facie case of retaliation. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). Although there is no precise time frame or limit, the causal inference for temporal proximity can be raised when the complaint and adverse employment action are separated by weeks, not months. *Fields v. Teamsters Local Union*

*No. 988*, 23 S.W.3d 517, 529 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Whitman cannot rely on close timing to show a causal connection because she testified that she could not recall the date on which she complained to Flores. Whitman also never complained to Flores or anyone else about the statements. Because Whitman cannot provide a specific date for her complaint to Flores, she has not alleged facts, even if taken as true, that raise a material issue of fact to raise a rebuttable inference of a causal connection between her complaint and her termination. As such, Whitman has not made a prima facie case for retaliation. We hold that the trial court erred when it denied the Department's plea to the jurisdiction by which the Department attacked jurisdiction in connection with Whitman's retaliation claim. We sustain the Department's second issue.

*B. Issue One: Failure to Exhaust Administrative Remedies*

Because our resolution of the Department's second issue is dispositive of this appeal, we need not address the Department's first issue.

## VI. *This Court's Ruling*

We reverse the judgment of the trial court, and we render judgment dismissing Whitman's suit against the Department.

MIKE WILLSON

JUSTICE

May 12, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.