

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00394-CV

———————————————————

ORLANDO TOLDSON, Appellant

V.

DENTON INDEPENDENT SCHOOL DISTRICT, Appellee

On Appeal from the 362nd District Court
Denton County, Texas
Trial Court No. 15-09087-362

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Orlando Toldson sued his former employer, appellee Denton Independent School District (DISD), alleging sexual harassment and retaliation claims under the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code Ann. §§ 21.051, .055. DISD moved for summary judgment, and the trial court granted the motion, dismissing both of Toldson's claims. Toldson appeals. In the "Issues Presented" portion of his brief, Toldson presents a single issue challenging the trial court's summary judgment only as to his retaliation claim.[1] We affirm.

### II. BACKGROUND

Toldson worked for DISD as a paraprofessional off and on from 2009 until he was terminated in February 2015. In 2014, DISD hired Toldson to serve as a paraprofessional teacher's aide in the special education department at Ryan High School (RHS) during the 2014–2015 academic year. He was initially assigned to assist

---

[1]Under his "Issues Presented," Toldson frames his appellate "issues" as follows: "Appellee's Motion for Summary Judgment on the retaliation claim should have been denied because Appellant presented sufficient evidence of his retaliation claim using both direct and circumstantial evidence and additional evidence that was sufficient enough to rebut the non-discriminatory reasons given for firing him." As we note below, Toldson includes in both the summary of his argument and the body of his brief a disheveled discussion that apparently relates to his sexual harassment claim. For the reasons we explain, we do not believe Toldson has adequately presented in his brief an issue challenging the trial court's summary judgment dismissal of his sexual harassment claim. Nevertheless, we address the relevant arguments Toldson makes concerning that claim out of an abundance of caution.

in the classroom of Torsha Winrow, who was one of RHS's special education teachers. On September 18, 2014, Toldson went into assistant principal Ronda Bean's office and told her that he was frustrated, that Winrow was demanding, that he did not understand what his responsibilities were in Winrow's classroom, and that Winrow was "almost militant-like." Toldson made no allegation during this meeting that Winrow had sexually harassed him. Bean encouraged Toldson to communicate his concerns to Winrow and to ask her to give him a better understanding of his responsibilities in her classroom, a course of action with which Toldson agreed.

On October 8, nearly three weeks after his September 18 meeting with Bean, Toldson returned to Bean's office to tell her that he still did not understand what his responsibilities as Winrow's teacher's aide were. Toldson made no allegation at this meeting that Winrow had sexually harassed him. Bean asked Toldson if he had communicated his concerns to Winrow as they had discussed in their prior meeting, and Toldson replied that he had not. Bean reiterated that Winrow was the classroom teacher and that he needed to communicate with her about the areas with which he was confused. Toldson agreed to meet with Winrow, and Bean asked him to let her know how things were going after he did so.

Winrow and Toldson finally met on Friday, October 24, 2014, to discuss the expectations she had for him as her teacher's aide. The following Wednesday, October 29, 2014, Toldson sent an email to the head of RHS's special education department, Tiffany Biggers, the entire substance of which said, "I need to meet with

you about Ms. Winrow." Biggers was not on school grounds that day, but when she returned the next day, she saw Toldson in the hallway and told him her availability to meet. However, Toldson did not follow up with Biggers to schedule a meeting, and he missed work the following Friday, October 31 and Monday, November 3.

On Tuesday, November 4, Biggers conducted a weekly meeting at which the department's paraprofessionals, Toldson included, were in attendance. After that meeting was over, Toldson stayed behind and spoke with Biggers. Toldson told Biggers that he was "tired of Ms. Winrow," that Winrow was "too much" and was inappropriate with the students, and that he was "fed up." When Biggers asked Toldson how Winrow had been inappropriate, he replied, "[A] lot of ways[,] and I'm just tired of it[;] I have had enough." Biggers asked Toldson to be specific about what was going on, but he did not do so, and Biggers suggested that Toldson talk to Winrow. Toldson replied, "[W]ell, I guess I will just snap" and walked away. Toldson did not tell Biggers that Winrow had sexually harassed him.

At approximately 7:40 p.m. on November 4, Toldson sent an email to Bean. In pertinent part, that email stated as follows:

Ms. Bean,

I have been trying to get help from several other staff members about an issue I am facing and had no response[,] so now I am contacting [you]. For the past several months[,] things in the classroom with Ms. Winrow have been getting progressively worse. I know we spoke previously about an issue, but this is a different, and much worse[,] issue. . . .

4

> There have been a seri[e]s of incidents that I have been extremely uncomfortable with in regard to Ms. Winrow being inappropriate with myself and even students in the classroom . . . . She has made sexually suggestive comments to myself as well as students in the classroom and physically crossed boundaries with myself and students.

Toldson's email further stated:

> Other staff have also witnessed these activities taking place and have echoed my concerns. I would love to talk to you about this further in person[;] however, I thought I would attempt to contact you via email first. I love my job and I love what I do[,] but I am getting to the point where I literally dread coming to work because this woman has made my job unbearable.

Bean did not read this email until the morning after Toldson sent it.

At approximately 5:50 a.m. on November 6, 2014, Toldson sent an email to DISD deputy superintendent Richard Valenta complaining about Winrow, and he copied RHS principal Vernon Reeves. In the email, Toldson said that he had been told that Valenta was "the person to contact regarding issues at [RHS] that [were] ongoing despite [his] best efforts to resolve them." After making other complaints about Winrow related to her performance in the classroom, Toldson wrote the following:

> In addition[,] there [have been] several occasions w[h]ere she made sexually suggestive comments to myself or other aide[]s as well as . . . touched me inappropriately. On one particular occasion[,] she stroked my face while telling me a story about how a child used to masturbate while looking at her lips. It made me extremely uncomfortable.

Toldson said that he had spoken to Bean about some issues related to Winrow, but he stated that he did not tell Bean anything about Winrow's "inappropriate physical

5

contact." Toldson wrote that Winrow had "begun trying to retaliate against [him] for talking to Mrs. Bean" and had "constantly been nit[]picking at [him] and asking [him] to redo the same task over and over to satisfy her."

In the email, Toldson also indicated that he had sought help from Biggers, and he referenced his recent conversation with her, claiming that she had asked him how he was "planning on resolving the issue" with Winrow and whether he was looking for a new job. Toldson wrote that he had been told that "the only way [he] could get out of Mrs. Winrow's class was to move down in pay." Toldson said that he had witnesses who would "back up" everything he was alleging.

Reeves replied to Toldson's email approximately five hours after he had sent it, telling him, "[p]lease come by and see me. I will work with you on your concerns." Reeves interviewed Toldson "the first thing that morning." During the interview, Reeves told Toldson that he wanted to do everything he could to help but that Toldson needed to provide specific details as to what had happened. But Toldson did not provide many specifics. The only specific instance that Toldson provided to Reeves was that on one occasion, while he and Winrow were sitting around a table in the classroom, Winrow told the story about the student masturbating, and she touched Toldson's face when doing so. Toldson gave Reeves a list of people to talk to who could corroborate his allegations of sexual harassment against Winrow.

Reeves offered to move Toldson to another classroom while he investigated Toldson's allegations, and Toldson accepted the offer. Thus, on the morning of

6

November 6—the same morning that he had sent his email to Valenta and Reeves—Toldson was moved from Winrow's classroom into the classroom of another RHS special education teacher, Kristiey Rodriguez, until the investigation of his allegations of sexual harassment could be completed. This move did not result in an alteration to Toldson's job title or pay.

The same day, Reeves began interviewing the potential witnesses Toldson had identified, and he completed those interviews by the next day. Of the five school employees that Reeves interviewed, Reeves did not find any who corroborated Toldson's allegations of sexual harassment against Winrow. Only one of the witnesses, another RHS paraprofessional named Melody Hampton, claimed to have seen Winrow touch Toldson. Hampton told Reeves that on a single occasion, she had seen Winrow touch Toldson's cheek when Winrow was leaving a table. But Hampton added that she had not heard the conversation between Winrow and Toldson that preceded the touch and that she did not know why Winrow had touched Toldson. Hampton did not provide Reeves with any other specific information about the touch, nor did she indicate that the touch appeared to be of a sexual nature.

After interviewing all the witnesses, Reeves interviewed Winrow. Winrow acknowledged that at the beginning of the school year, she had informed Toldson about a former student masturbating. She stated that she had done so in order to educate Toldson, who was new to her classroom, about the types of students and behaviors that he could encounter.

7

Having concluded his investigation, Reeves met with Toldson on November 7 and told him that he did not find any corroboration of his allegations of sexual harassment against Winrow. But Reeves told Toldson that he could see there was tension between Toldson and Winrow and that he had decided to make Toldson's change to Rodriguez's classroom permanent. Toldson asked Reeves if he could have time to think about the decision and to talk to his wife about it, and Reeves agreed to that request but asked Toldson to let him know by the end of the day in writing whether his permanent placement in Rodriguez's classroom was an acceptable resolution to him or whether he would like the investigation into his allegations against Winrow to continue.

But Toldson did not respond in writing, so on the morning of November 12, Reeves emailed him to ask him whether he was satisfied with the investigation and with his move to Rodriguez's classroom or whether he wanted DISD's human resources department to further investigate his allegations. Also on November 12, Regina Wright, DISD's director of human resources over classified and operations personnel, received an email with Toldson's concerns, and she contacted Toldson and scheduled a meeting with him for November 14 to discuss those concerns.

At 9:00 p.m. on November 12, Toldson replied to Reeves's earlier email, stating, "Upon returning to school on Monday [November 10] and still being harassed[,] I have decided to continue the investigation and have since contacted HR." The next morning, Reeves forwarded Toldson's email to DISD's assistant

8

superintendent for human resources, Robert Stewart, stating that he had only just learned of Toldson's new allegation of harassment and that he would meet with Toldson to find out specifically what had happened. That same morning, Reeves met with Toldson and asked him to provide specific information about the harassment he had suffered upon returning to school the previous Monday, but Toldson declined to do so, stating that he preferred to give the details in writing and that he would do so from his home computer. Reeves then allowed Toldson to return to his duties.

On November 14, Toldson emailed Wright to cancel their scheduled meeting, and he sent another email to her requesting that she provide him with instructions on how to initiate the formal grievance process. Wright provided him with the instructions. Four days later, on November 18, Toldson filed a Level 1 grievance, in which he restated, nearly verbatim, the allegations he had asserted in his November 6 email to Reeves. In addition, Toldson asserted that Biggers and Bean had retaliated against him for his report against Winrow. The specific forms of retaliation that Toldson reported were that Bean had yelled at him and had told him that he needed to be at work on time and that Biggers had made him attend a mandatory department meeting at which Winrow would be present. The only remedy Toldson requested in the grievance was that he be removed from RHS and given a position at another DISD school.

Wright was assigned as the hearing officer for Toldson's November 18 grievance. On November 20, Wright called Toldson to discuss the grievance, to

9

initiate the investigation of it, and to discuss his requested remedy. Toldson did not answer, and Wright left him two messages. Toldson returned her call later that day, and they scheduled a meeting for the next day so that Wright could begin her investigation. At her meeting with Toldson the next day, Wright informed Toldson that she could accommodate his request to be moved to another school. But Toldson wavered, indicating that he wanted to amend his grievance to seek a different remedy than the one he had initially requested. Toldson asked if he could speak with his wife and reschedule the meeting with Wright for a time after the school's Thanksgiving break.

Wright told Toldson that the grievance timeline would be put on hold until he got back to her, and later that day, Toldson emailed her to say that he did not have enough information to make an informed decision about her suggested grievance remedy, that he felt as if he was being rushed, that he would be amending his requested remedy, and that he wanted to know how to continue with the grievance process. Wright responded to Toldson's email, stating that she would move forward with the grievance process and would schedule a hearing on his grievance.

On December 1, Toldson amended the requested-remedy portion of his November 18 grievance, stating that he was now seeking to remain employed at RHS but in a different capacity and that he additionally wanted Winrow, Bean, and Biggers to be fired. Also on December 1, Toldson filed another Level 1 grievance, this time complaining about Wright and Valenta for conduct related to the November 21

meeting on his November 18 grievance. In the December 1 grievance, Toldson asserted that while he was on orders from his doctor to refrain from working, he was "repeatedly contacted by individuals from [DISD] HR." He claimed that he was pressured to meet with Valenta and Wright about his November 18 grievance, that he finally did meet with them "against [his] better judgment," and that he was "bullied into making a decision" regarding the grievance. Toldson stated that he wanted Valenta and Wright to be fired.

On December 9, Wright held the Level 1 hearing on Toldson's November 18 grievance, and she issued her decision on January 5, 2015. Wright said that based on her own investigation, as well as the investigation Reeves had conducted, she found no evidence to support Toldson's allegations against Winrow. Wright noted that despite the fact that Reeves had also not found any evidence to substantiate Toldson's claims, he nonetheless offered to move Toldson to another classroom and that Toldson had found that resolution acceptable. Wright acknowledged Toldson's claim that he had suffered further harassment even after the move, but she said that he had refused to provide any specific details concerning those allegations and that consequently, further investigation of his claims had been unsuccessful. Wright granted Toldson's request to remain at RHS but denied his request that Winrow, Biggers, and Bean be fired.

Meanwhile, another DISD employee, David Hicks, was assigned as the Level 1 hearing officer for Toldson's December 1 grievance. Hicks held the hearing on that

11

grievance on December 15, 2014, and although Toldson attended that hearing, he did not provide any additional details when asked about his allegations in that grievance and instead noted that everything was already in the grievance document. Noting Toldson's refusal to provide additional information, Hicks concluded that Wright had not violated Toldson's rights but had simply been attempting to resolve his November 18 grievance in the most informal setting possible and in a quick and fair way. Hicks denied Toldson's requested remedies. Toldson then appealed from Wright's and Hicks's decisions on his Level 1 grievances, resulting in a Level 2 proceeding on each grievance.

While all of this had been going on, Toldson's job performance at RHS was an issue. Specifically, Toldson was often late to arrive, he often left early, and he was often absent, all without providing proper notification to his superiors. He also took longer breaks than allowed, as well as unauthorized breaks that left students unsupervised. That pattern continued even after Reeves moved Toldson from Winrow's classroom to Rodriguez's. From the periods of November 14 through November 21 and December 1 through December 5, Toldson reported to work for a single half day.[2] Additionally, Toldson repeatedly claimed that being at RHS was affecting his health and prohibiting him from performing his job.

---

[2]The school district was on Thanksgiving break the week of November 24 through November 28.

12

On January 16, 2015, because of Toldson's claims that being at RHS was negatively affecting his health, and in an attempt to remedy his attendance issues at work, DISD made the decision to move Toldson to another school within the district. The next day, Bean notified Toldson that he was being placed on administrative leave with pay while DISD looked for another position for him.

Toldson was reassigned to Rivera Elementary School (RES), and on January 22, Bean informed him that he was to report to RES on January 26. But Toldson did not report to RES until January 29. Sometime during the school day on January 29, Toldson told the RES teacher to whom he had been assigned that she was beautiful. The next evening, Toldson sent the teacher text messages that were laced with unwelcomed sexual innuendo. The following Monday, February 3, Toldson stared at the teacher while she was working with a student, and when she and Toldson passed by each other that day, Toldson brushed up against her.

In less than a week of working with the teacher, Toldson told her that she was beautiful, that he was unhappy in his marriage, that she was "so [expletive] hot" and that he "want[ed her]." On one occasion, Toldson placed his hand on the teacher's backside. On another occasion, Toldson began rubbing the teacher's leg when they were sitting at a table and whispered sexually suggestive statements to her. He also made statements to her about the size of his male anatomy and grabbed her hand and "moved it in a forceful way toward[] his private area." The teacher reported Toldson's conduct.

Upon learning of Toldson's conduct toward his assigned teacher, the principal at RES requested that Toldson not be permitted to return to the campus. Following that request, Wright decided to terminate Toldson's employment with DISD and explained her decision in a letter, which stated as follows:

Dear Mr. Toldson:

This memo is to notify you of your status with Denton ISD. During the current school year you submitted grievances, which alleged sexual harassment and retaliation by a Special Ed teacher on the Ryan High School campus and harassment and bullying by Human Resources Administrative staff. The results of these investigations were deemed unfounded. In addition, a complaint against a Special Ed teacher and paraprofessional were filed by another employee on the Ryan campus and you fully supported these allegations which the investigative results again proved to be unfounded. During the investigation, other concerns were revealed in regard to your attendance and work performance. These concerns caused a major disruption of the campus work environment; the Principal requested that you not return to the Ryan Campus.

This recommendation facilitated a reassignment to the Tomas Rivera campus. You were scheduled to report on January 26, 2015. You failed to report or notify anyone of your absences and reported on January 29, 2015, after receiving an email from the campus Principal. You responded to the email and stated you were on medical leave during this time which to date has not been validated. After being on the campus for less than one week, an immediate charge was made by the supervising teacher in the classroom you supported. She alleged that you acted inappropriately with her via unwarranted unprofessional communication and even more concerning, claims of sexual harassment. Again, there was a major disruption of the work environment and the Principal of this campus requested that you not return. For this reason, we find it is in the best interest of the District to terminate your employment, effective February 17, 2015. Please make sure all property belonging to the District is returned and you will be contacted to complete an exit. Should you have any personal items located on the

14

Ryan or Rivera campus, please contact my office and we will secure those items for you.

Sincerely,

[Signature]

In October 2015, Toldson sued DISD, asserting two claims under the TCHRA. First, he alleged a claim of sexual harassment based on a hostile work environment.[3] Second, he alleged a retaliation claim. *See* Tex. Lab. Code Ann. § 21.055. DISD filed a motion for no-evidence and traditional summary judgment. The overarching basis of that motion was that Toldson could not establish that DISD's governmental immunity had been waived. The trial court granted DISD's motion without stating its reasons for doing so and dismissed Toldson's claims with prejudice. Toldson appealed.

## III. DISCUSSION

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When a party moves for both traditional and no-evidence

---

[3]Under the TCHRA, sexual harassment is a form of sex-based discrimination, which is prohibited by Section 21.051 of the Labor Code. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 763, 771 (Tex. 2018); *see* Tex. Lab. Code Ann. § 21.051. There are two general varieties of sexual harassment claims under the TCHRA: (1) quid pro quo harassment, in which employment benefits were conditioned on sexual favors; and (2) harassment that creates a hostile or offensive work environment. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex. 2010); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 n.5 (Tex. 2004).

15

summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the trial court properly granted the no-evidence motion, we do not consider the arguments raised regarding the traditional summary judgment motion. *See id.*

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d

572, 582 (Tex. 2006)).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

To prevail on a traditional summary judgment motion, the movant must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).  A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause.  *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).  When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion are meritorious.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

## B.  Toldson's Retaliation Claim

In what he identifies as his "Issues Presented," Toldson asserts only that the trial court erred by granting DISD summary judgment on his retaliation claim.  In its motion for traditional summary judgment, DISD asserted that it was entitled to summary judgment on Toldson's retaliation claim based on governmental immunity. DISD focused on one particular element of Toldson's retaliation claim, arguing that

17

he could not show a causal connection between the protected activity he alleged (reporting Winrow for sexual harassment) and the adverse employment action he alleged (DISD's termination of his employment).

### 1. Law applicable to Toldson's retaliation claim

Because DISD is a governmental unit, it is immune from suit absent an express waiver of governmental immunity. *See Alamo Heights*, 544 S.W.3d at 770 ("Governmental units, including school districts, are immune from suit unless the state consents."). Toldson made his retaliation claim under the TCHRA, a statute that provides a waiver of immunity, albeit a limited one: the waiver applies only when the plaintiff states a claim for conduct that actually violates the Act. *See id.*; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636–37 (Tex. 2012). In other words, absent some evidence that the school district violated the TCHRA, the school district's governmental immunity is not waived. *See Alamo Heights*, 544 S.W.3d at 763.

To establish a retaliation claim under the TCHRA, a plaintiff must show that (1) he engaged in an activity protected by the TCHRA, (2) an adverse employment action occurred, and (3) there is a causal link between the protected activity and the adverse action. *Id.* at 782. An employee may prove his retaliation claim with either direct or circumstantial evidence of discriminatory intent. *See Mission Consol.*, 372 S.W.3d at 634. "Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 756 (Tex. App.—Houston [14th Dist.]

2017, no pet.) (citations omitted).  Proof by direct evidence is rare in employment cases.  *See Alamo Heights*, 544 S.W.3d at 782.

Because direct evidence of discriminatory intent is rarely available, the three-part *McDonnell Douglas* burden-shifting framework permits an employee to raise a presumption of discrimination with circumstantial evidence.  *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S. Ct. 1817, 1824–26 (1973).  If the employee establishes a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim.  *Alamo Heights*, 544 S.W.3d at 782.  But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  Once the presumption of discrimination is rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination.  *Id.*  In both direct- and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee.  *Id.*  All parts of the burden-shifting framework are jurisdictional.  *Id.* at 764.

In addressing whether the respondent had put forth sufficient evidence of the causation element of her retaliation claim in its decision in *Alamo Heights*, the supreme court stated that it had yet to determine the appropriate causation standard for a TCHRA retaliation claim.  *Id.* at 783.  It further stated that it did not need to decide that question because both parties in the case had advocated the but-for causation

19

standard, and neither had asserted that another causation standard should apply. *Id.* The majority thus applied the but-for standard in analyzing the retaliation claim at issue. *Id.* As in *Alamo Heights*, both parties here have advocated a but-for causation standard, and neither has argued that a different standard should apply. Accordingly, we apply that causation standard in this case. *See id.*

The causation standard for the *McDonnell Douglas* prima-facie-case element is not onerous and can be satisfied merely by proving close timing between the protected activity and the adverse action. *Id.* at 782. But if the employer provides evidence of a legitimate reason for the adverse action, under a but-for causation standard, the employee must prove the adverse action would not have occurred "but for" the protected activity. *Id.* The but-for causation standard is significantly more difficult to prove than prima facie causation. *Id.*

### 2. No direct evidence of but-for causation

Toldson asserts that an email that Stewart allegedly sent to Wright and Valenta is direct evidence that but for his report of sexual harassment, he would not have been terminated from his position at DISD. In his brief, Toldson quoted at length from this alleged email. DISD argues Toldson failed to support his contention about the alleged email with appropriate citations to the record.

We agree with DISD. Toldson has provided no citation enabling us to locate the alleged email in the summary judgment record, which exceeds 2,000 pages. But in any event, we note that Toldson's argument as to how the purported quote

20

constitutes direct evidence of causation is thin: he merely states that the lengthy quotation in his brief is "direct evidence that his complaints of sexual harassment served as a basis for his termination." This argument is entirely conclusory, as it offers no explanation as to how the alleged quotation constitutes direct evidence of causation.

In his brief, Toldson also claims that Wright's termination letter is direct evidence of causation. But he did not present any argument explaining how that letter constitutes direct evidence of causation. He merely asserts that the letter is "direct evidence that [DISD] terminated [his] employment because of his complaints of sexual harassment." This, too, is nothing more than a conclusory argument.

Toldson bears the burden of supporting his contentions with appropriate citations to the record. *See* Tex. R. App. P. 38.1(g), (i); *King v. Wells Fargo Bank, N.A.*, 205 S.W.3d 731, 734–35 (Tex. App.—Dallas 2006, no pet.). Toldson's failure to provide any record citation to the alleged email from Stewart does not satisfy this burden. *See King*, 205 S.W.3d at 735 (noting that reviewing court is not required to perform independent search of voluminous record to support a party's argument). Moreover, Toldson cannot meet his burden to show direct evidence of causation with only bare conclusory arguments that are unsupported by appropriate citations, as he has attempted to do in his brief with regard to Stewart's alleged email and Wright's termination letter. *See* Tex. R. App. P. 38.1(i); *Arzola v. ACM Props., LP*, No. 04-12-00713-CV, 2013 WL 5948413, at *1–2 (Tex. App.—San Antonio Nov. 6, 2013, no

21

pet.) (mem. op.). We conclude that Toldson has not met his burden to present direct evidence that but for his report of sexual harassment, DISD would not have terminated his employment.

### 3. No evidence of pretext

If Stewart's email and Wright's termination letter are not direct evidence of causation, argues Toldson, then they are at least circumstantial evidence sufficient to establish a prima facie case of causation. DISD does not quarrel with Toldson on this particular part of the *McDonnell Douglas* burden-shifting scheme, arguing instead that it presented evidence that it had legitimate, nonretaliatory reasons for terminating Toldson's employment and that Toldson has failed to present evidence raising an issue of fact as to whether those reasons were pretextual. *See Alamo Heights*, 544 S.W.3d at 790 (holding that even assuming respondent established a prima facia case of retaliation based on her termination, petitioner presented evidence sufficient to rebut any such presumption).

> a.    *DISD presented evidence showing legitimate, nonretaliatory reasons for Toldson's termination*

We agree with DISD's contention that it presented evidence of a legitimate, nonretaliatory reason for terminating Toldson's employment. As detailed above, DISD presented evidence showing longstanding problems with Toldson's job performance at RHS, specifically with regard to his sporadic attendance. DISD presented evidence showing that in an attempt to remedy those problems, it assigned

22

Toldson to RES and that he had been told to report to that campus on January 26. DISD presented evidence showing that the same performance problems occurred immediately upon Toldson's reassignment to RES—Toldson did not report to the campus when he was supposed to but instead reported on January 29.

DISD further presented evidence showing that immediately upon his arrival at RES, he engaged in conduct toward a teacher that resulted in her reporting him for sexual harassment and in the principal of RES requesting that he not be allowed to return to the campus. And DISD presented evidence showing that Wright terminated Toldson's employment following the principal's request and that she did so based on Toldson's longstanding attendance issues across multiple positions at multiple campuses, as well as his own sexual harassment of the RES teacher, both of which had caused major disruptions of the working environments at RHS and RES. We conclude DISD presented evidence that Toldson's termination occurred for legitimate, nonretaliatory reasons, and that means the burden shifted back to Toldson to raise a fact issue that DISD's stated reasons for terminating him were but a pretext and that he would not have been terminated but for his reporting Winrow for sexual harassment. *See id.* at 782.

### b.     *Toldson failed to show a fact issue on pretext*

In evaluating but-for causation evidence in retaliation cases, we examine all of the circumstances, including (1) temporal proximity between the protected activity and the adverse action, (2) knowledge of the protected activity by the decisionmaker,

23

(3) expression of a negative attitude toward the employee's protected activity, (4) failure to adhere to relevant established company policies, (5) discriminatory treatment in comparison to similarly situated employees, and (6) evidence the employer's stated reason is false. *Id.* at 790.

As DISD notes, Toldson did not address in his brief the third, fourth, and fifth but-for causation factors. As to the remaining factors, Toldson's arguments are difficult to parse. As to the first and second factors—temporal proximity and knowledge of the decisionmaker—Toldson appears to argue that the proximity between his termination and his EEOC charge, his appeal of his Level 1 grievances, and his appeal of his Level 2 grievances demonstrated a causal connection between his report of sexual harassment and his termination. But Toldson did not cite to any evidence showing when those respective events occurred or to any authority supporting a conclusion that the timing of those events—whatever it happened to be—was "very close" to his termination. *See id.* (noting that "[t]emporal proximity is relevant to causation when it is 'very close'" (citation omitted)). Additionally, Toldson did not even assert, let alone cite evidence showing, that Wright, the person who made the decision to terminate his employment, knew about either his EEOC charge or his grievance appeals when she made the decision to terminate his employment.

That leaves factor six: evidence showing DISD's reasons for terminating his employment were false. Toldson advances four grounds purporting to show that DISD's stated reasons for terminating him were false. We consider each in turn.

24

First, Toldson again points to the same email from Stewart that he alleged showed direct evidence of retaliation, as well as to Wright's termination letter. As to Stewart's purported email, Toldson again fails to cite us to its location in the voluminous record, and for the reasons we already stated above regarding that email, we will not go searching for it. *See King*, 205 S.W.3d at 735 ("It is not our duty to make an independent search of the voluminous summary judgment record for evidence supporting [a party's] position.").

That leaves Wright's termination letter. Toldson asserts that Wright's letter "stated that Toldson was terminated because his complaints of sexual harassment caused a major disruption in the work place." But that is a misrepresentation of what Wright's letter says.[4] Wright's letter indeed stated that Toldson was being terminated for causing a major disruption of his work place. In fact, to be more accurate, Wright stated that Toldson was being terminated because he had caused two major disruptions of two workplaces. But Wright did not tie either disruption to Toldson's report of sexual harassment. Rather, she stated that concerns over his attendance and work performance at RHS had caused a major disruption of the RHS campus work environment, which had led its principal to request that he not return there. And she stated that his conduct toward a teacher at RES that resulted in the teacher making a sexual harassment claim against him had caused a major disruption of the work

---

[4]We have quoted the letter in its entirety above.

25

environment at RES, which had led its principal to also request that he not return. So Wright's letter does not create a fact issue as to whether DISD's stated reasons for terminating Toldson's employment were false.

Second, Toldson attempts to show that DISD's stated reasons for terminating him were false by asserting that "[i]t is difficult to understand what [DISD's] alleged non-retaliatory reasons are because the testimony and evidence by the decision makers is inconsistent." Toldson references alleged testimony from Reeves, Stewart, and Wright that he argues demonstrates DISD's inconsistent explanations for his termination. But Toldson does not cite us to the location of the purported testimony upon which he relies for this argument, and as with Stewart's alleged email, we will not comb through the record to find evidence to support Toldson's contentions that DISD offered inconsistent reasons for its decision to terminate his employment. *See id.*

Third, Toldson points to testimony from Reeves, Biggers, and Bean, alleging that they testified that Toldson's attendance issues at RHS were not a problem and that this demonstrates that DISD's stated reasons for terminating him were false. But Toldson provides a record cite only to the asserted testimony from Reeves. Toldson claims that Reeves testified that his attendance issues were "not a big deal," and based on that statement, Toldson argues that DISD's assertion that his attendance issues caused a major disruption was false. In his deposition, Reeves testified that Toldson's attendance problems were not a big deal before he made his complaint. But contrary

26

to Toldson's assertion, this statement is so vague and devoid of context as to be insufficient to show that DISD's stated reasons for terminating Toldson's employment were false. *See Alamo Heights*, 544 S.W.3d at 790 (concluding deposition testimony that respondent relied upon was "vague and so devoid of context" that it had barely a scintilla of probative value on whether her employer had expressed a negative attitude toward her protected activity).

Finally, Toldson claims that the falsity of DISD's stated reasons for terminating him is demonstrated by the fact that it retaliated against three other employees by terminating their employment after they made claims of workplace discrimination. But he cites no evidence to support either his assertion that such employees were terminated or that they made claims of workplace discrimination. And in any event, even assuming Toldson is correct that DISD did terminate those other three employees' employment, Toldson's claims about the reasons for their termination are purely conclusory and merely state his subjective belief that they were terminated as retaliation for their engaging in a protected activity. *See Niu v. Revcor Molded Prods. Co.*, 206 S.W.3d 723, 731 (Tex. App.—Fort Worth 2006, no pet.) ("[A]n employee's subjective beliefs of retaliation are merely conclusions and do not raise a fact issue precluding summary judgment in a retaliatory discharge claim.").

Having reviewed all of the causation factors, we conclude that Toldson has failed to raise a fact issue that he would not have been terminated but for his report of

27

sexual harassment against Winrow. Accordingly, DISD's governmental immunity has not been waived as to Toldson's retaliation claim.

**C. Toldson's Sexual Harassment Claim**

As might be apparent from our analysis of Toldson's retaliation claim, Toldson's briefing with respect to that claim was borderline deficient. But for the reasons explained below, to the extent his brief can be understood to present a second issue complaining about the trial court's summary judgment dismissal of his sexual harassment claim, we conclude that Toldson has inadequately briefed that issue and thus has waived it. But even if we were to consider Toldson's briefing related to his sexual harassment claim to be adequate, we would nevertheless uphold the trial court's summary judgment on that claim because Toldson has failed to produce more than a scintilla of evidence showing that DISD knew he was being sexually harassed and failed to take prompt remedial action.

**1. Law applicable to Toldson's sexual harassment claim**

To establish a prima facie case of sexual harassment based on a hostile work environment, a plaintiff must show that (1) he belonged to a protected group, (2) he was subjected to unwelcome sexual harassment, (3) the harassment complained of was based on sex, (4) the harassment complained of affected a "term, condition, or privilege" of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Tex. Dep't of Fam. & Protective Servs. v.*

28

*Whitman*, 530 S.W.3d 703, 710 (Tex. App.—Eastland 2016, no pet.); *see Alamo Heights*, 544 S.W.3d at 771.

In its no-evidence motion for summary judgment, DISD asserted that Toldson had no evidence of the fourth or fifth elements. Thus, to defeat DISD's no-evidence motion, Toldson was required to produce more than a scintilla of probative evidence that raised a genuine issue of material fact as to both of those elements. *See Smith*, 288 S.W.3d at 424; *King Ranch*, 118 S.W.3d at 751.

### 2. Inadequate briefing

As a preliminary matter, we note that DISD suggests that Toldson has waived any argument that the trial court erred by granting summary judgment on his sexual harassment claim because Toldson has inadequately briefed that matter. We agree.

First of all, DISD is correct that Toldson did not include among the issues presented in his brief a complaint regarding the trial court's dismissal of his sexual harassment claim. Rather, as we have noted above, he quite plainly stated that the sole issue presented in his brief is that the trial court erred by granting DISD's motion for summary judgment as to his retaliation claim. *See* Tex. R. App. P. 38.1(f) (noting that an appellant's brief "must state concisely all issues or points presented for review"). Accordingly, in his issues presented, Toldson did not concisely state an issue clearly challenging the trial court's summary judgment dismissal of his sexual harassment claim, nor is that particular issue one that is subsidiary to the only issue Toldson actually presented. *See id.*

29

That notwithstanding, however, under his "Summary of the Argument," Toldson included vague references to his sexual harassment claim. And following the arguments in his brief attacking the trial court's summary judgment dismissal of his retaliation claim, Toldson included further discussion under headings entitled, "Toldson has sufficient evidence of his sexual harassment claims against [DISD]"; "Toldson was subjected to severe or pervasive sexual harassment that affected the terms, conditions, or privileges of his employment"; and "Defendant knew or should have known of the harassment and failed to take prompt remedial action."

We recognize the supreme court's admonition that a party can preserve a complaint in the body of its brief even if it is not separately presented as an issue in the brief. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012). But even so, such complaints still must be adequately briefed. *See Hornbuckle v. Cadillac*, No. 02-15-00267-CV, 2016 WL 3157569, at *2 (Tex. App.—Fort Worth June 2, 2016, no pet.) (mem. op.). And with respect to the discussion in the body of his brief regarding the trial court's summary judgment dismissal of his sexual harassment claim, Toldson has not done so, particularly with respect to his discussion concerning the fifth element of his sexual harassment claim—whether DISD knew or should have known that he was being harassed but failed to take prompt remedial action.

An appellant's brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i); *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex.

30

2010) (recognizing that "[t]he Texas Rules of Appellate Procedure require adequate briefing."). It is not our role to brief Toldson's complaint for him; if we did so, we would be abandoning our role as neutral adjudicators and would become an advocate. *See Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 89 (Tex. App.—El Paso 2012, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). In the absence of appropriate record citations or a substantive analysis, a brief does not present an adequate appellate issue. *See* Tex. R. App. P. 38.1(i); *Hornbuckle*, 2016 WL 3157569, at *2.

In an effort to show that he has more than a scintilla of evidence to create a fact issue on this fifth element of his sexual harassment claim, Toldson put forth (by our count) nineteen sentences asserting a bevy of facts that ostensibly are supported by the record. After setting out all of that alleged evidence, Toldson merely concludes, "Therefore, Appellant provided sufficient evidence to the trial court to establish that he had at least some evidence, and certainly more than a scintilla of evidence" to show a fact issue as to that fifth element.

As we have noted, the summary judgment record in this case exceeds 2,000 pages. Of the nineteen sentences of alleged facts Toldson relies upon to show a fact issue on the fifth element, eight contain no citation to the record whatsoever. Six others contain citations only to "Exhibit J, L" or "Exhibit L." And three of the five remaining sentences include "Exhibit D, Exhibit 11, p6" within the citation Toldson provided to support them. With respect to Exhibits D, J, and L, Toldson provided

31

no reference to the specific place in the appellate record where those particular exhibits can be found.

The lack of specific direction with respect to those exhibits is especially problematic in this case given the voluminous record before us. The record reflects that in his response to DISD's motion, Toldson relied on sixteen primary exhibits, which he identified using letters in the fashion "Exhibit A," "Exhibit B," continuing through "Exhibit P." Many of those exhibits were entire deposition transcripts or affidavits that had additional sub-exhibits attached to them. At least some of those sub-exhibits used the exact same identifying method Toldson employed for his primary exhibits. For example, Toldson's "Exhibit L" has twenty exhibits that are themselves labeled "Exhibit A" through "Exhibit T." Toldson's generic citations to Exhibits D, J, and L are thus so imprecise and unclear that they do not sufficiently point us to the specific evidence he alleges those exhibits contain.

Toldson's failure to furnish any record citation for many of the facts he relies upon to show a fact issue on element five leaves us unable to analyze that purported evidence without first undertaking our own independent search of the voluminous record. Likewise, his general citations to Exhibits D, J, and L leave us unable to analyze the asserted facts that are allegedly supported by those exhibits without performing our own independent search for them. As we have already explained, we have no duty to search the voluminous record for evidence supporting Toldson's argument. *See King*, 205 S.W.3d at 735.

32

In addition to his failure to provide appropriate citations to the record to support most of his assertions regarding the fifth element of his sexual harassment claim, Toldson also failed to provide substantive argument on that matter. As noted above, his analysis explaining how the alleged evidence he set out shows a fact issue on element five is conclusory. His argument runs as follows. First, Toldson states two legal propositions:

> Under the law, an employer may be liable for sexual harassment if it knew or should have known of the harassment in question and failed to take prompt remedial action. *Williamson v. City of Houston*, 148 F.3d 462, 464 (5th Cir. 1998). An employer has actual knowledge of harassment when it is known to "higher management" or someone who has the power to take action to remedy the problem. *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999).

Second, Toldson sets forth the meagerly-cited factual assertions noted above. And third, after reciting those alleged facts, Toldson merely concludes, "Therefore, Appellant provided sufficient evidence to the trial court to establish that he had at least some evidence, and certainly more than a scintilla of evidence, to defeat Defendant's traditional and no-evidence summary judgment motion." Thus, Toldson provided no substantive explanation as to how the purported evidence he attempts to rely upon constitutes more than a scintilla of evidence creating a fact issue on the fifth element of his sexual harassment claim. Rather, his argument amounts to nothing more than a bare assertion that the evidence he claims is in the record creates such a fact issue. That is not sufficient to comply with Rule 38.1(i)'s requirements. *See Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 650 (Tex. App.—Houston [1st

33

Dist.] 2015, no pet.) (noting that a party does not satisfy Rule 38.1(i) by making conclusory arguments).

In sum, in his issues presented, Toldson presents a single issue challenging only the trial court's summary judgment dismissal of his retaliation claim. *See* Tex. R. App. P. 38.1(f). And to the extent Toldson's brief can be construed as attempting to present an issue challenging the trial court's summary judgment on his sexual harassment claim, he has not provided appropriate record citations and substantive analysis to support his arguments regarding the fifth element of that claim. Accordingly, his briefing is inadequate with respect to that matter. *See* Tex. R. App. P. 38.1(i); *Holmes v. Cassel*, No. 01-16-00114-CV, 2017 WL 3389908, at *5 (Tex. App.—Houston [1st Dist.] Aug. 8, 2017, no pet.) (mem. op.) (noting that Rule 38.1(i)'s requirements are not satisfied by conclusory statements); *Hornbuckle*, 2016 WL 3157569, at *2 ("In the absence of appropriate record citations or a substantive analysis, a brief does not present an adequate appellate issue."); *Magana v. Citibank, N.A.*, 454 S.W.3d 667, 680–81 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that appellant waived issue by inadequately briefing it).

### 3. No evidence that DISD knew or should have known that Toldson was being harassed and failed to take prompt remedial action

Even if we were to conclude that Toldson's brief adequately presents an issue challenging the trial court's summary judgment on his sexual harassment claim, he

34

nevertheless would not prevail because we do not agree that he has presented more than a scintilla of evidence creating a fact issue on the fifth element.

We begin our analysis with a caveat. As noted above, Toldson relies upon several factual assertions that he does not support with any citation to the 2,000 page summary judgment record. He supports several other factual assertions with imprecise and vague citations to the record. For the reasons already explained, we have no duty to perform our own independent search of the record for evidence supporting Toldson's contentions. *See King*, 205 S.W.3d at 735. We thus will not consider Toldson's unsupported factual assertions in our analysis. We note, however, that Toldson cites to eleven pages of his own deposition to support some of the factual assertions he makes, and because he has adequately cited us to those pages, we will analyze whether the cited portions of his deposition are sufficient to show a fact issue on element five.

From the portions of his factual assertions that are supported by appropriate citations to the clerk's record, it appears Toldson relies upon two pieces of evidence to show a fact issue on element five. First, he points us to his deposition testimony concerning his October 29, 2014 email to Biggers. He asserts that he sent this email to Biggers but that she failed to respond to it. We presume Toldson contends that this email put DISD on notice that he was being sexually harassed and that Biggers's alleged lack of response shows that DISD did not take prompt remedial action. From the cited portions of Toldson's deposition, the most we can glean regarding the

35

email's substance is that the email simply said, "I need to meet with you about Ms. Winrow." But that brief statement conveys nothing about sexual harassment and is insufficient to show that after Biggers received it, DISD knew or should have known that Toldson was making allegations of sexual harassment.

Second, Toldson also points to a portion of his deposition testimony in which he claims to have testified that he emailed Bean and told her (1) that he had been trying to get help from other staff members with no response, (2) that Winrow had made sexually suggestive comments to him and to students and that the issue was getting progressively worse, and (3) that Winrow's behavior toward him was so unbearable that he dreaded coming to work. We have carefully reviewed the nine pages of the clerk's record that Toldson cites to support these assertions, and they provide no support for the factual assertions Toldson advances.

Thus, even if we did not find Toldson's brief wanting as to the trial court's summary judgment dismissal of his sexual harassment claim, he nevertheless would not prevail. It was his burden to present more than a scintilla of evidence to show a fact issue on every element of his sexual harassment claim that DISD challenged in its no-evidence motion for summary judgment. *See Smith*, 288 S.W.3d at 424; *King Ranch*, 118 S.W.3d at 751. DISD challenged the fourth and fifth elements of Toldson's sexual harassment claim, and Toldson failed to meet his burden to show a fact issue

36

on the fifth element.[5]  Thus, the trial court did not err by granting summary judgment on Toldson's sexual harassment claim.

## IV.  CONCLUSION

We hold that the trial court did nor err by granting DISD summary judgment on Toldson's retaliation claim.  Thus, we overrule that issue.  We further hold that to the extent Toldson's brief attempts to present an additional issue complaining of the trial court's summary judgment on his sexual harassment claim, Toldson waived that issue by inadequately briefing it and even assuming he did not, he nevertheless failed to produce more than a scintilla of evidence showing a fact issue on the fifth element of that claim.  We therefore overrule that issue.  Accordingly, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).

/s/ Dana Womack

Dana Womack
Justice

Delivered:  November 21, 2019

---

[5]Because Toldson had the burden to produce more than a scintilla of evidence to show a fact issue as to both the fourth and fifth elements of his sexual harassment claim, our conclusion that he failed to meet his burden with respect to the fifth element is dispositive, and we need not address Toldson's arguments related to the fourth element.  *See* Tex. R. App. P. 47.1.

37